IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

June 05, 2024 03:59 PM
SCT-CIV-2019-0062
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

## IN THE SUPREME COURT OF THE VIRGIN ISLANDS

KAREN TURNBULL-WHEATLEY    )     **S. Ct. Civ. No. 2019-0062**
and OTHER HEIRS OF KENNETH    )     Re: Super. Ct. Civ. No. 550/2010 (STT)
TURNBULL, JR.; KLARIA TURNBULL;    )
KEITH TURNBULL; and VIVETTE    )
TURNBULL,    )
      Appellants/Defendants,    )
   )
v.    )
   )
**NAOMI TURNBULL as Successor Trustee**    )
**of the KENNETH TURNBULL, SR.**    )
**REVOCABLE TRUST,**    )
      Appellee/Plaintiff.    )
_____ )

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Renee Gumbs Carty

Considered: November 17, 2020
Filed: June 5, 2024

Cite as: 2024 VI 24

**BEFORE:**     **RHYS S. HODGE,** Chief Justice; **MARIA M. CABRET,** Associate Justice; and **IVE ARLINGTON SWAN,** Associate Justice.

**APPEARANCES:**

**Clive C. Rivers, Esq.**
Law Offices of Clive Rivers
St. Thomas, U.S.V.I.
   *Attorney for Appellant*,

**Anna H. Paiewonsky, Esq.**
Paiewonsky Law Firm, PLLC
St. Thomas, U.S.V.I.
   *Attorney for Appellee.*

**OPINION OF THE COURT**

*Turnbull, et al. v. Turnbull*    2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 2 of 22

**CABRET, Associate Justice.**

¶1    Karen Turnbull-Wheatley, Keith, Klaria, Kenneth Jr., and Vivette Turnbull ("Appellants") appeal the Superior Court's denial of partial summary judgment, the Superior Court's order substituting Appellee Naomi Turnbull ("Appellee") as Successor Trustee of the Kenneth Turnbull Sr. Revocable Trust, and the Superior Court's judgment awarding treble damages to Naomi Turnbull. For the reasons that follow, we affirm the Superior Court's denial of partial summary judgment and its order substituting Naomi Turnbull in her successor trustee role as plaintiff. However, we reverse the Superior Court's award of treble damages and remand for a recalculation of damages.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

¶2    Karen, Keith, Klaria, and Kenneth Jr. are the children of Ivy Turnbull and Kenneth Turnbull, Sr. ("Kenneth Sr.").[2] Vivette Turnbull is the wife of Kenneth Turnbull, Jr. Ivy and Kenneth Sr. were in the process of constructing an eight-bedroom home at Parcel No. 13BAA Estate Enighed, No.1 Cruz Bay Quarter, St. John, U.S. Virgin Islands (the "St. John Property") when Ivy died in 2001. Ivy's Estate was admitted to probate, with Karen named as Executrix. To pay some of the debts of Ivy's Estate, and to complete the construction of the St. John Property, Kenneth Sr., Kenneth Jr., and Vivette took out a $100,000 mortgage on Kenneth Sr.'s marital home on St. Thomas. In return, Karen, Keith, and Klaria signed an agreement with Kenneth Jr. authorizing him to complete construction on the St. John Property, and giving him complete

---

[1] We separately issued our ruling reversing the Superior Court's November 15, 2019 Order denying Kenneth Jr.'s post-judgment motion contesting the seizure of his pickup truck to satisfy the judgment. See *Turnbull-Wheatley v. Turnbull*, 2023 V.I. 17 (2023).

[2] Because all parties possess the same last name, they are herein referred to by their first names to minimize confusion.

*Turnbull, et al. v. Turnbull*    2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 3 of 22

control over the St. John Property for one year after completion, so that Kenneth Jr. could rent it and recoup the money he spent paying the estate debts and completing the construction. Because Kenneth Jr. was living in Florida at the time, he orally assigned his rights and duties under the agreement to Kenneth Sr.

¶3     Kenneth Sr. completed construction of the St. John Property by December 2005 and began renting it immediately. He collected $8,500 per month in rental income from December 2005 until April 2008. In May of 2008, Karen took over the St. John Property and began collecting the rent, halting payments to Kenneth Sr. In June 2008, Kenneth Sr. filed a claim for $57,887 in unreimbursed funds against Ivy Turnbull's estate, which was rejected by Karen, as the estate's executrix.

¶4     The Superior Court closed Ivy's estate on March 6, 2009, apportioning a one-third interest in the St. John Property to Kenneth Sr., and equal one-sixth interests to Karen, Keith, Klaria, and Kenneth Jr. On March 23, 2009, Kenneth Sr. requested an accounting from Karen regarding the rental proceeds and expenses of the St. John Property. Because Karen never provided an accounting, Kenneth Sr. filed a complaint in the Superior Court seeking repayment for the construction completion costs, mortgage loan interest expenses, and insurance expenses for the St. John Property. However, during the pendency of the litigation, on June 28, 2013, Kenneth Sr. passed away. But before he died, Kenneth Sr. had created a revocable trust on September 3, 2008, (the "September Trust") and nominated his aunt, Naomi Turnbull, as successor trustee. After his death, the Superior Court substituted his aunt, Naomi Turnbull, as the Trustee of his revocable trust in the lawsuit.

¶5     The September Trust requires that Kenneth Sr.'s interest in the St. John Property be distributed to his uncle Ludence Turnbull and Naomi in equal shares upon Kenneth Sr.'s death.

*Turnbull, et al. v. Turnbull*      2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 4 of 22

Pertinent to this case, Article IV of the September Trust specifies that, during Kenneth Sr.'s life, the September Trust could be revoked or modified as follows:

> The Settlor may, by signed instruments delivered to the Trustee during the Settlor's life:
> (1) withdraw property from this Trust in any amount and at any time upon giving reasonable notice in writing to the Trustee;
> (2) add other property to the Trust;
> (3) change the beneficiaries, their respective shares and the plan of distribution;
> (4) amend this Trust agreement in any other respect;
> (5) revoke this Trust in its entirety or any provision therein; provided, however the duties or responsibilities of the Trustee shall not be enlarged without the Trustee's consent.

Kenneth Sr. also created a will on September 3, 2008, appointing Ludence as executor. As part of the will, he allocated all his personal property that had not yet been distributed by him, and his residual estate, to the Kenneth Turnbull Sr. Revocable Trust (the September Trust).

¶6      On November 4, 2008, Kenneth Sr. purportedly created another revocable trust (the "November Trust") which was to contain the St. John Property, a property on St. Thomas, and some other personal property. The November Trust named Bernice Turnbull, the wife of Ludence Turnbull, and Naomi Turnbull as trustees and beneficiaries, and expressly excluded Karen, Keith, Klaria, and Kenneth, Jr.

¶7      On March 13, 2019, the Superior Court held a bench trial on the claims in the 2010 complaint. None of the defendants appeared at the trial, nor were they represented by counsel.[3] On July 15, 2019, the Superior Court entered a judgment against Appellants in the sum of $1,328,956.81 for debts owed to the Kenneth Turnbull Sr. Revocable Trust, which included the construction costs of the St. John Property, the eleven years of unpaid rents owed to the Trust for

---

[3] Kenneth Jr. and Vivette Turnbull were declared in default in the case on March 12, 2014. Keith, Klaria, and Karen Turnbull were the only defendants to file a motion for summary judgment on April 12, 2017.

*Turnbull, et al. v. Turnbull*
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 5 of 22

2024 VI 24

Kenneth Sr.'s one-third share of the St. John Property, treble damages and pre- and post-judgment interest. Appellants timely appealed the judgment on August 14, 2019.[4]

## II.  JURISDICTION AND STANDARD OF REVIEW

¶8      This Court may not consider the merits of an appeal unless it first determines that it has jurisdiction over the matter. *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008). "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's July 15, 2019 memorandum opinion and order "dispos[ed] of all of the claims submitted to the Superior Court for adjudication," it is a final reviewable order. *St. Croix, Ltd. v. Shell Oil Company*, 60 V.I. 468, 472 (V.I. 2014). We also have jurisdiction to review all properly preserved prior interlocutory orders, which have thereby "merge[d] with the final judgment... and may be reviewed on appeal from the final order." *Id.* at 472-73 (quoting *In re Estate of George*, 59 V.I. 913 919 (V.I. 2013)).

¶9      We conduct a plenary review over the Superior Court's application of law denying summary judgment, applying the same standard that the Superior Court should have applied and reviewing its findings of fact for clear error. *Garcia v. Garcia*, 59 V.I. 758, 766 (V.I. 2013) "Because summary judgment is a drastic remedy, it should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

---

[4] Before Appellants filed their appeal, the Superior Court issued a writ of execution on the judgment authorizing the Virgin Islands Marshal to seize the personal property of Kenneth Jr., a 2009 Ford pickup truck, which the Marshal did seize. Kenneth Jr.'s motion requesting release of the vehicle was denied, and he appealed separately from the seizure of his truck and the denial of his motion for its release. We issued our opinion on this related matter separately. See *Turnbull-Wheatley*, 2023 V.I. 17.

*Turnbull, et al. v. Turnbull*      2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 6 of 22

issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Walters v. Walters*, 60 V.I. 768, 774-75 (V.I. 2014).

## III.   DISCUSSION

¶10    Appellants argue that the Superior Court erred when it denied their motion for summary judgment. Appellants also argue that the Superior Court erred when it substituted Naomi as trustee of Kenneth Sr.'s revocable trust and as the party in interest in the lawsuit, and that the Superior Court likewise erred when it entered a treble damages award against them. Naomi responds that Appellants Kenneth Jr. and Vivette may not advance these arguments because they lack standing. We address these arguments below.

### A. Naomi's Waiver Arguments

¶11    Naomi argues that because Kenneth Jr. and Vivette did not move to set aside the default entered against them on March 12, 2014, they lack standing in this appeal. Naomi also argues that because Karen, Keith, and Klaria failed to appear at the March 13, 2019 bench trial, they defaulted on their claims and are estopped from challenging the Superior Court's findings of fact of conclusions of law. Finally, Naomi argues that because Karen, Keith, and Klaria "failed...[to move] to alter, amend, or set aside the Judgment within the time allotted," they have waived all of their arguments. However, the latter two arguments are factually inaccurate, as the record shows that no default was entered against Karen, Keith, or Klaria, and further shows that Karen did move for reconsideration and a new trial, which application was denied by the Superior Court on August 1, 2019.

¶12    Moreover, Naomi cites no relevant case law to support the argument that Kenneth Jr. and Vivette lack standing, have waived their rights, or are estopped from contesting the trial court's decision. Therefore, Naomi has waived these arguments, and Kenneth Jr. and Vivette may proceed

*Turnbull, et al. v. Turnbull*
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 7 of 22

2024 VI 24

as proper parties to this appeal to the extent that their arguments are properly preserved.[5] *See* V.I.

R. App. P. 22(m) (issues that are unsupported by citation to legal authority are deemed waived for

purposes of appeal); *Mahabir v. Heirs of George,* 2021 V.I. 22, ¶11 n.6.

¶13     But Naomi's waiver arguments fail on the merits as well, since in the Virgin Islands,

standing is not a jurisdictional bar to a court's ability to hear a case. Rather, as Virgin Islands

courts are not Article III courts, and are therefore not subject to the same constitutional constraints

on jurisdiction, this Court treats standing as a judicially imposed claims processing rule that is

subject to waiver. *Benjamin v. AIG Ins. Co. of Puerto Rico,* 56 V.I. 558, 564-65 (V.I. 2012). *See*

*United Corp. v. Hamed,* 64 V.I. 297, 303 (V.I. 2016).

## B. The Motion for Summary Judgment

¶14     We now proceed to the merits. Karen, Klaria, and Keith argue that the Superior Court erred

in finding that the St. John Property remained in the September Trust, and thus erred in denying

their motion for summary judgment. They argue that Kenneth Sr. revoked the September Trust by

creating the November Trust, and that because Kenneth Sr. did not validly convey the St. John

Property out of the September Trust and into the November Trust, the November Trust is invalid.

Therefore, since neither trust held Kenneth Sr.'s property, all of Kenneth Sr.'s property must pass

to them through the laws of intestacy. To address Appellants' arguments, we must examine the

state of the law of trusts within the Virgin Islands.

### Revocation of Trusts

---

[5] *See Angelo Iafrate Const., LLC v. Potashnick Const., Inc.,* 370 F.3d 715, 722 (8th Cir. 2004) ("When co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment. To avoid such inconsistent results, a judgment on the merits for the answering party should accrue to the benefit of the defaulting party.") (citing *Frow v. De La Vega,* 82 U.S. (15 Wall.) 552, 554 (1872)).

*Turnbull, et al. v. Turnbull*　　　　　　　2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 8 of 22

¶15　Appellants concede that Kenneth Sr. validly formed the September Trust, but argue that Kenneth Sr.'s purported creation of the November Trust revoked the September Trust, squarely raising the question of what is required to revoke an express non-charitable trust in the Virgin Islands, an issue of first impression in this Court. Specifically, this Court must define the legal standard for revocation of a trust whose settlor has expressly reserved the power of revocation and specified the method of revocation.

¶16　When Kenneth Sr. established the September Trust in 2008, before our opinion in *Banks v. Int'l Rental & Leasing Corp.* had issued, the controlling rule was: "When no precedents relate specifically to the adjudication of a Virgin Islands dispute, the courts are directed to turn to the various Restatements of Law... which are to provide the rules of decision for such cases in the absence of local laws to the contrary." 55 V.I. 967, 974 (V.I. 2011) (quoting *Co–Build Cos., Inc., v. V.I. Refinery Corp.*, 570 F.2d 492, 494, 15 V.I. 528, 533 (3d Cir. 1978)). The "most recent Restatement," *id.* at 976, at the time and the one that is both current today and pertinent to the issue *sub judice*, states: "If the terms of the trust reserve to the settlor a power to revoke or amend the trust exclusively by a particular procedure, the settlor can exercise the power only by substantial compliance with the method prescribed." RESTATEMENT (THIRD) OF TRUSTS § 63, cmt. i (2003). However, while helpful at times, "the Restatements... no longer constitute the rules of decision in Virgin Islands courts," *King v. Appleton*, 61 V.I. 339, 349 (V.I. 2014) (quoting *Brunn v. Dowdye*, 59 V.I. 899, 911 n.10 (V.I. 2013)), and we do not "mechanically apply the most recent Restatement" to our decisions. *Banks*, 55 V.I. at 976. Instead, we analyze common law questions of first impression through the framework established in *Banks*. Here, in the absence of statutory authority, we must perform a *Banks* analysis to flesh out the rule of trust revocation that is best for

*Turnbull, et al. v. Turnbull*
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 9 of 22

2024 VI 24

the Virgin Islands. *See King*, 61 V.I. at 352 n.11 ("[A] number of areas of trust law… will require further examination under the *Banks* factors."). *See also Banks*, 55 V.I. at 981-84.

*Banks* Analysis

¶17　"Under *Banks*, we consider (1) the common law rule this jurisdiction has applied in the past; (2) the majority rule adopted in other jurisdictions; and most importantly (3) the soundest rule of law for the Virgin Islands." *Wilkinson v. Wilkinson*, 70 V.I. 901, 907 (V.I. 2019).

### 1.　*Virgin Islands Common Law*

¶18　We must first distill the common law rule applied previously in the Virgin Islands regarding the revocation of trusts. In *Estate of Savain*, the Territorial Court, relying on the Restatement (Second) of Trusts, held that in a revocable trust "[i]f the settlor specifies in the terms of the trust the particular manner in which the trust can be revoked, the settlor can then only revoke the trust in that manner." 39 V.I. 77, 88 (V.I. Terr. Ct. 1998), *aff'd sub nom. In re Savain*, 43 V.I. 215 (D.V.I. App. Div. 2000) (citing RESTATEMENT (SECOND) OF TRUSTS § 330(1) cmt. j (1959)). The Appellate Division of the District Court affirmed *Estate of Savain*, similarly stating that "[i]f the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances." *In re Savain*, 43 V.I. at 227 (quoting RESTATEMENT (SECOND) OF TRUSTS § 330(1) cmt. j (1959)). The District Court of the Virgin Islands had also addressed the issue of trust revocation in *Hodge v. Hodge*, 15 V.I. 154, 174 (D.V.I. Feb. 9, 1997), and held that where the trustor does not expressly reserve the power of revocation, "no power to revoke is inferred." The limited Virgin Islands case law on this topic shows that the common law rule applied in the past was that where the trust terms specifically reserve the power of revocation, revocation can only occur in strict adherence with those terms. *See Estate of Savain*, 39 V.I. at 88 ("[T]he settlor has power to revoke the trust… to

*Turnbull, et al. v. Turnbull*                    2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 10 of 22

the extent that by the terms of the trust he reserved such a power.") (quoting RESTATEMENT

(SECOND) OF TRUSTS § 330(1) (1959)).

## 2. *The Majority Rule*

¶19    At common law, the majority of jurisdictions follow the same approach as the Virgin

Islands courts in *Savain*: when a revocable trust expressly specifies the method of revocation,

revocation may only occur in strict adherence to the method provided.[6] Further, the case law from

---

[6] *See Merchants Nat. Bank of Mobile v. Cowley*, 89 So. 2d 616, 623 (Ala. 1956) ("[W]here the settlor reserves a power to revoke the trust in a particular manner, he can revoke it only in that manner."); *Aiello v. Clark*, 680 P.2d 1162, 1168 (Alaska 1984) ("Where method of revocation specifically reserved to 'written notice delivered to the Trustee'… [n]o other method of revocation is permissible under the terms of the Trust."); *Schuster v. Schuster*, 251 P.2d 631, 636 (Ariz. 1952) ("It seems well established that where the settlor reserves the power to revoke a trust only in a specified manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances."); *Gall v. Union Nat. Bank of Little Rock*, 159 S.W.2d 757, 761 (Ark. 1942) ("The rule seems to be well settled that where a trust agreement by its own terms sets out the method by which it may be revoked, it can be revoked only in the manner thus provided."); *Brown v. Int'l Tr. Co.*, 278 P.2d 581, 583 (Colo. 1954) (en banc) ("[I]f a particular method of revocation is specified, that procedure must be strictly followed in order to make the revocation effective."); *Sec. Tr. Co. v. Spruance*, 174 A. 285, 288 (Del. Ch. 1934) ("Where a power to revoke is reserved but the manner of its exercise is specifically prescribed, a revocation to be effective must conform to the designated manner."); *Fla. Nat. Bank of Palm Beach Cty. v. Genova*, 460 So. 2d 895, 896 (Fla. 1984) ("The settlor has power to revoke the trust… to the extent that by the terms of the trust he reserved such a power.") (quoting RESTATEMENT (SECOND) OF TRUSTS § 330(1)), *accord Gurfinkel v. Josi*, 972 So. 2d 927, 928 (Fla. Dist. Ct. App. 2007) ("[T]he exercise of a power to revoke or amend a trust must be done in strict conformity with the terms expressed in the instrument.") (citing *MacFarlane v. First Nat'l Bank of Miami*, 203 So. 2d 57, 60 (Fla. Dist. Ct. App. 1967)); *Woodruff v. Tr. Co. of Georgia*, 210 S.E.2d 321, 322, 324 (Ga. 1974) (Where the settlor "reserve[d] the right to… revoke th[e] trust… by instrument in writing signed by [the settlor] and delivered to trustee, but only with the written consent and approval of the trustee[,]"… the settlor "was bound by the terms of the agreement, under which she could not revoke the trust without the consent of the trustee."); *Cf. Miller v. First Hawaiian Bank*, 604 P.2d 39, 41 n.5 (Haw. 1979) ("Where a settlor reserves a power to modify a trust only in a particular manner or under particular circumstances, he can modify the trust only in that manner or under those circumstances."); *Walter E. Wilhite Revocable Living Tr. v. Nw. Yearly Meeting Pension Fund*, 916 P.2d 1264, 1270 (Idaho 1996) ("When a settlor provides for the mechanism by which the power of revocation is to be exercised, these procedures must be followed for there to be a valid revocation."); *Warner v. Keiser*, 177 N.E. 369, 375 (Ind. App. 1931) (en banc) (The right to revoke must be exercised "according to the terms in which it is reserved" before the death of the settlor); *In re Est. of Sanders*, 929 P.2d 153, 158 (Kan. 1996) (The "authority [is clear] that where a trust document contains specific provisions to be complied with, they are required to be followed"); *Downs v. Sec. Tr. Co. of Lexington*, 194 S.W. 1041, 1043 (Ky. 1917) ("When a deed of trust provides a particular mode of revocation, an effective revocation may be made only by pursuing that mode."); *McLendon v. First Nat. Bank of Shreveport*, 299 So. 2d 407, 411 (La. Ct. App. 1974) ("[U]nder common-law trust principles where the settlor of a trust has reserved the right to revoke the trust only with the consent of the trustee, the trustee's consent is essential.") (citing RESTATEMENT (SECOND) OF TRUSTS § 330, 330(1), 331); *Brown v. Fid. Tr. Co.*, 94 A. 523, 525 (Md. 1915) ("[B]y the terms of the deed [of trust], it could only be revoked by the method provided by the deed itself."); *Phelps v. State St. Tr. Co.*, 115 N.E.2d 382, 383 (Mass. 1953) ("The law of Massachusetts is plain that a valid trust, once created, cannot be revoked or altered except by the exercise of a reserved power to do so, which must be exercised in strict conformity to its terms."); *Connecticut Gen. Life Ins. Co. v. First Nat. Bank of*

*Turnbull, et al. v. Turnbull*
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 11 of 22

2024 VI 24

*Minneapolis*, 262 N.W.2d 403, 405 (Minn. 1977) (revocable trust could only be revoked by written instrument as specifically set forth within the reservation of power to revoke clause); *Hiserodt v. Hamlett*, 20 So. 143, 144 (Miss. 1896) (A trust is subject to a "right of revocation, if exercised according to the terms of the trust as declared[,]" or, stated another way, a settlor "may declare a trust revocable upon a named contingency" and then the beneficiaries will only take "upon the condition that the revocation does not follow upon the happening of the contingency.*"); Love v. St. Louis Union Tr. Co.*, 497 S.W.2d 154, 159 (Mo. 1973) (en banc) (where settlor reserved the right to alter, amend, or revoke a trust by written notice delivered to trustees, settlor could only alter, amend, or revoke the trust in this manner); *Mayer v. Tucker*, 141 A. 799, 801 (N.J. 1928) ("If [the] right [to revoke] is never exercised according to the terms in which it is reserved... it can have no effect on the validity of the trust....*"), accord Clark v. Freeman*, 188 A. 493, 495 (N.J. Ch. 1936) ("The power [to revoke] can be exercised only in the manner specified and by the persons to whom the power is given or the attempted revocation is void.*"); In re Mordecai's Tr.*, 201 N.Y.S.2d 899, 902 (N.Y. Spec. Term), *aff'd sub nom. Matter of Mordecai's Tr.*, 210 N.Y.S.2d 478 (N.Y. App. Div. 1960) ("[W]here the procedure for revocation is clearly set forth in the trust instrument, the conditions imposed may not be ignored. So, at common law, with the rule as to revocation similar to the statutory rule in this state, if the settlor reserves a power to revoke the trust only with the consent of the trustee, the trust can not be revoked without such consent.") (citation omitted); *Ridge v. Bright*, 93 S.E.2d 607, 611 (N.C. 1956) (A trust remains unrevoked where a reserved power of revocation is not exercised "according to the terms in which it is reserved.") (quoting *Witherington v. Herring*, 53 S.E. 303, 304 (N.C. 1906)); *Morey v. Sohier*, 3 A. 636 (N.H. 1886) (Settlor "revoked the deed [of trust] according to the power of revocation therein contained."); *Magoon v. Cleveland Tr. Co.*, 134 N.E.2d 879, 883 (Ohio Ct. App. 1956) ("[I]f a particular mode of revocation is specified, it is essential that the mode specified be strictly followed in order to make the revocation effective...." Where a settlor "specif[ies] a particular mode of revocation and alteration in the trust instrument, [they are] bound... to its terms."); *In re Reid*, 46 P.3d 188, 190 (Okla. Civ. App. 2002) ("If the settlor reserves the power to revoke the trust only by notice in writing delivered to the trustee, he can revoke it only by delivering such a notice to the trustee.") (quoting RESTATEMENT (SECOND) OF TRUSTS § 330 cmt. j); *Scalfaro v. Rudloff*, 934 A.2d 1254, 1257 (Pa. 2007) ("When a settlor of a trust reserves a power to revoke in a given manner and under certain conditions, revocation cannot be effected in another manner.") (citing *Damiani v. Lobasco*, 79 A.2d 268, 271 (Pa. 1951)); *Union Tr. Co. v. Watson*, 68 A.2d 916, 919 (R.I. 1949) ("Where the settlor reserves a power to revoke the trust in a particular manner, he can revoke it only in that manner...."); *Peoples Nat. Bank of Greenville v. Peden*, 92 S.E.2d 163, 165 (S.C. 1956) ("If a particular mode of revocation is specified in a deed of trust, it is essential that the mode specified should be followed in order to make the revocation effective.*"); Schroeder v. Herbert C. Coe Trust*, 437 N.W.2d 178, 185 (S.D. 1989); *In re Gulf Pension Litig.*, 764 F. Supp. 1149, 1188 (S.D. Tex. 1991), *aff'd sub nom. Borst v. Chevron Corp.*, 36 F.3d 1308 (5th Cir. 1994) *cert denied* 514 U.S. 1066 (1995) ("At common law.... where the settlor reserved a power of revocation in the terms of the trust, he could revoke the trust in the manner and to the extent that he reserved such a power."); *Kline ex rel. Kline v. Utah Dep't of Health*, 776 P.2d 57, 61 (Utah Ct. App. 1989) ("[A] trustor has the power to [revoke] a trust only if and to the extent that such a power was reserved by the terms of the trust. ... If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances.") (citing and quoting RESTATEMENT (SECOND) OF TRUSTS § 330 cmt. j (1959)); *Cohn v. Cent. Nat. Bank of Richmond*, 60 S.E.2d 30, 33 (Va. 1950) ("[I]f a particular mode of revocation is specified, it is essential that the mode specified be strictly followed in order to make the revocation effective."); *Lynch v. Lynch*, 522 A.2d 234, 235 (Vt. 1987) (Where a "grantor retains a power of revocation, the grantor may terminate it at any time in the manner and to the extent to which he has reserved the power of revocation."); *In re Button's Est.*, 490 P.2d 731, 733 (Wash. 1971) (en banc) ("Where the trust instrument specifies the method of revocation, only that method can be used.") (citing RESTATEMENT (SECOND) OF TRUSTS § 330 cmt. j (1959)); *One Valley Bank, Nat. Ass'n v. Hunt*, 516 S.E.2d 516, 520 (W. Va. 1999) ("A trust which is subject to revocation can be revoked only in accordance with the terms thereof. ... If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances.") (quoting RESTATEMENT (SECOND) OF TRUSTS § 330 cmt. j); *Richardson v. Stephenson*, 213 N.W. 673, 674 (Wis. 1927) ("[I]t is generally held that the [reserved] power of revocation must be strictly pursued, and that a mere substantial compliance with the trust instrument is not sufficient."); *Matter of Est. of Lohrie*, 950 P.2d 1030, 1034 (Wyo. 1997) ("Revocation may only be exercised in the manner specified.*").

*Turnbull, et al. v. Turnbull*          2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 12 of 22

the majority rule jurisdictions relies on the Restatement (First) of Trusts, (*see, e.g., Cohn*, 60 S.E.

2d at 35; *Schuster*, 251 P.2d at 636) or the Restatement (Second) of Trusts (*see, e.g., Estate of*

*Savain*, 39 V.I. at 88 *aff'd*, 43 V.I. 215; *Estate of Sanders*, 929 P.2d at 159; *Aiello*, 680 P.2d at

1168), as those authorities were the preeminent persuasive guidance available at the time most

courts developed this aspect of their common law. Under the minority view, the strict compliance

requirement is relaxed, with courts recognizing that when a trust specifies the method of

revocation, it may be revoked by "substantial compliance" with its terms.[7]

¶20     Although an analysis under *Banks* is not concerned with statutes or the statutory scheme

of other jurisdictions, we would be remiss if we failed to recognize that the Uniform Trust Code

("UTC") has been adopted, either in whole or in part, by thirty-six jurisdictions. The UTC, under

Section 602(c), adopts the substantial compliance rule based on the Restatement (Third) of

Trusts.[8] Notwithstanding this trend away from the strict adherence rule, the majority common

law rule remains intact.[9]

---

[7] *See Hackley Union Nat. Bank v. Farmer*, 234 N.W. 135, 141 (Mich. 1931) (finding there "was such a substantial compliance [with the specified method of revocation] that it effectively revoked the trust"); *Miller v. Exch. Nat. Bank of Tulsa*, 80 P.2d 209, 210-12 (Okla. 1938) (trust was "properly revoked" despite not strictly complying with the method of revocation provided); *In re Est. of Larson*, 2007 WL 404714, at *3 (Wash. Ct. App. 2007), *rev. denied* 178 P.3d 1033 (Wash. 2008) ("Where a trust instrument specifies the method of... revocation, the trustor must substantially comply with that method.")(citing *Williams v. Bank of Cal., N.A.*, 639 P. 2d 1339 (Wash. 1982)); *In re Wendland-Reiner Tr.*, 677 N.W.2d 117, 121 (Neb. 2004) (Where the settlor reserved and specified the method of trust modification, the court found under the common law that "[s]ome courts adhere to a strict compliance standard.... The modern trend, however, backs away from strict compliance. Both the Restatement (Third) of Trusts and the Uniform Trust Code provide that a settlor may amend a trust by substantially complying with a method set out in the terms of the trust.").

[8] Section 602(c) of the UTC provides that a settlor may revoke a trust by "substantial compliance with a method provided in the terms of the trust," or "if the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by: (A) a later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or (B) any other method manifesting clear and convincing evidence of the settlor's intent."

[9] The common law of those jurisdictions that have declined to follow the UTC continue to rely on the language of the trust instrument as evidence of a settlor's true intent. *See In re Trust of Flint*, 118 A.3d 182 (Del. Ch. Ct. 2015)

*Turnbull, et al. v. Turnbull*
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 13 of 22

2024 VI 24

### 3. *The Soundest Rule for the Virgin Islands*

¶21     The third step in a *Banks* analysis requires this Court to weigh all persuasive authority, both within and outside of the Virgin Islands, and to determine the most appropriate and cogent common law rule for the Virgin Islands based on the unique characteristics and needs of the territory. *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014) (per curiam). In analyzing the third factor, we must consider the practicability and the purpose the proposed rule will serve, as well as the rule that is best in accord with the public policy of the Virgin Islands, including consistency with related statutes, courts rules, and judicial precedents. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379 (V.I. 2014).

¶22     "The polestar of trust… interpretation is the settlor's intent." *Giller v. Grossman*, 2021 WL 3889320, at *3 (Fla. Dist. Ct. App. 2021). *See Covenant Presbytery v. First Baptist Church*, 489 S.W.3d 153, 156 (Ark. 2016); *In re Estate of Warden*, 2 A.3d 565, 572 (Pa. Super. Ct. 2010); *Storkan v. Ziska*, 94 N.E.2d 185, 188 (Ill. 1950); *Univ. of S. Indiana Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006) ("The primary purpose of the court in construing a trust instrument is to ascertain and give effect to the settlor's intention."). Moreover, "[t]here is no higher duty which rests upon a court than to carry out the [valid] intentions of a testator…." *Shelton v. King*, 229 U.S. 90, 101 (1913).

---

("The cardinal rule of law in a trust case is that the intent of the settlor controls the interpretation of the instrument. 'Such intent must be determined by considering the language of the trust instrument, read as an entirety, in light of the circumstances surrounding its creation.' All other rules of construction must be subordinate to determining [the] settlor's intent, their value being as aids in ascertaining that intent as precisely as possible. ") (citing *Chavin v. PNC Bank*, 816 A.2d 781 (Del. 2003)); *Haggerty v. Thornton*, 68 Cal. Ct. App. 1003, 1008 (Cal. 2021) ("[I]f the trust instrument "explicitly makes the method of revocation provided in the trust instrument the exclusive method or revocation," the method in the trust instrument must be used.").

*Turnbull, et al. v. Turnbull*     2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 14 of 22

¶23    In light of these principles, we agree with the Superior Court that the soundest rule for the Virgin Islands is that when a settlor has reserved the power of revocation, revocation can only be accomplished by strict adherence to the terms of the trust, as that rule best respects the settlor's intent, and protects the public's interest, thereby instilling faith in future settlors by limiting revocation to the specific terms of the trust. *Turnbull v. Turnbull*, 68 V.I. 534, 542-43 (V.I. 2018). The rule of "strict adherence" will best uphold the integrity of the settlor's true intent at the time of drafting and avoid affording unnecessary leeway and conferring unintentional benefits upon any party excluded from taking under the trust. Further, an adoption of the strict adherence standard will preserve judicial economy by preventing litigation by excluded heirs to circumvent the express revocation methods of a revocable trust. Finally, like the Superior Court, we believe that "future settlors stand to lose little as they are limited only by their own terms." *Id* at 543.

## Alleged Revocation of the September Trust

¶24    We now address Appellants' arguments that (1) the creation of the November Trust revoked the September Trust, and (2) Kenneth Sr. did not validly convey the St. John Property out of the September Trust and into the November Trust.

Article IV of the September Trust provides that:

The Settlor may, by signed instruments delivered to the Trustee during the Settlor's life:

...
[R]evoke this Trust in its entirety or any provision therein; provided, however [that] the duties or responsibilities of the Trustee shall not be enlarged without the Trustee's consent.

Appellants contend that pursuant to the Article IV revocation power, Kenneth Sr. revoked the September Trust by creating the November Trust. We must first determine whether Kenneth Sr.'s

*Turnbull, et al. v. Turnbull*          2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 15 of 22

purported creation of the November Trust strictly adheres to the specified method of revocation: delivery of a signed instrument to the trustee during the settlor's life.

¶25     As a preliminary matter, we note that Kenneth Sr. was both the sole settlor and trustee of the September Trust. However, we conclude that Kenneth Sr. did not have to deliver a written instrument to himself in order to strictly adhere with the specified method of revocation in the September Trust. *Barnette v. McNulty*, 516 P.2d 583, 586 (Ariz. Ct. App. 1973) ("It would be absurd to require the settlor to call himself up on the telephone as trustee and tell himself that he is revoking the trust. It would be equally absurd to have the settlor send himself a letter as trustee to inform himself as trustee that the trust is to be terminated."); *Paul v. Arvidson*, 123 P.3d 808, 811 (Okla. Civ. App. 2005) ("Because [the property owner] was both the Grantor and the [trustee] (sic), we will not impose a technical requirement that he deliver written notice to himself."); *Moon v. Lesikar*, 230 S.W.3d 800, 806 (Tex. App. 2007) ("When the trustee is also the settlor of the revocable trust, the settlor is not required to serve written notice on himself."); *Argo v. Moncus*, 721 So. 2d 218, 222 (Ala. Civ. App. 1998); *Alerus Fin., N.A. v. W. State Bank*, 750 N.W.2d 412, 423 (N.D. 2008); *Gelber v. Glock*, 800 S.E.2d 800, 807 n.7 (Va. 2017). *See also In re Wendland-Reiner Tr.*, 677 N.W.2d 117, 122 (Neb. 2004). Therefore, in this case, the Appellants merely had to show that Kenneth Sr. intended to terminate the September Trust's property provision. *Barnette*, 516 P.2d at 586. Creation of a new trust document can demonstrate this intent to revoke on the part of the settlor-trustee, *Arvidson*, 123 P.3d at 809, as Appellants assert, provided that the intent is clear, "not repugnant to settled principles of public policy and is otherwise valid." *Shelton*, 229 U.S. at 101. Consequently, if a settlor-trustee wants to create a different trust, he or she can "revoke [an] old trust and create the new one in a single transaction." *Cowley*, 89 So. 2d at 623 (quoting RESTATEMENT (FIRST) OF TRUSTS § 330, cmt i). Thus, we agree with those jurisdictions that hold

*Turnbull, et al. v. Turnbull*
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 16 of 22

2024 VI 24

that where the settlor and the trustee are the same person, it is not necessary for the settlor to deliver a written instrument to himself to achieve revocation.

¶26     Nevertheless, for the November Trust to properly revoke the September Trust, the November Trust had to be a valid trust. In *King v. Appleton*, we established the elements necessary to create a valid trust: "(1) a valid conveyance of a trust property, (2) from a settlor who intends to create a trust, (3) to a trustee to hold legal title (4) for the benefit of a third party beneficiary." *King*, 61 V.I. at 351-52.[10] Under the first element of this test, the deeding of the St. John Property into the November Trust was an essential element to the validity of the November Trust. But the St. John Property was never deeded into the November Trust. Thus, the November Trust was invalid. Because the deeding of the St. John Property into the November Trust did not occur, the September Trust was never revoked and the St. John Property remained in the September Trust.[11] As Kenneth Sr. did not validly create the November Trust, the September Trust was never revoked and we affirm the Superior Court's denial of Appellants' motion for summary judgment.

## C. Substitution of Naomi Turnbull as Party in Interest

---

[10] The November Trust also fails as a matter of invalid creation. The creation of a valid trust must include (1) a declaration and intention to create a trust, (2) a description of the property, and (3) the trustee's handling and acceptance of the subject matter as a trust." *King*, 61 V.I. at 352 (citing *In re Estate of Morton*, 769 P.2d 616, 620 (Kan. 1987) holding "the elements necessary to the creation of a valid trust are...(3) [the] trustee's handing and acceptance of the subject matter as a trust"). Here, because the November Trust lacked the signatures of the co-trustees and failed to provide a way for the co-trustees to accept, the November Trust could not constitute a valid trust.

[11] Indeed, in the Virgin Islands, "[f]or an inter vivos gift of real estate to be effective,... [there must be] (1) a donative intent on the part of the grantor at the time the deed was executed, and (2) an actual or constructive delivery of the deed to the grantee." *Chestnut v. Goodman*, 59 V.I. 467, 473 (V.I. 2013) (internal quotations omitted) (emphasis added). There is no evidence of a deed to putative November Trust trustees Bernice and Naomi. Therefore, there was no donative intent "at the time the deed was executed," because Kenneth Sr. did not execute a deed, and further there was no "delivery," *id.* which cannot demonstrate a present intent to transfer title to the St. John Property. *See also* 28 V.I.C. §§ 41, 42.

*Turnbull, et al. v. Turnbull*        2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 17 of 22

¶27    After Kenneth Sr. died, the Superior Court substituted Naomi Turnbull in his stead as successor trustee of the September Trust on March 10, 2014. The Appellants concede that they believe "the successors in interest are Bernice and *Naomi*...," (emphasis added) which seems to foreclose their assertion that the Superior Court improperly substituted Naomi as the party in interest.[12] We have already determined that the September Trust is the only valid trust in the present circumstances, and that the St. John Property is part of the September Trust corpus, and therefore Naomi was indeed properly substituted as successor trustee, as she had been named by Kenneth Sr. as a successor trustee in the September Trust. *See Dale Expl., LLC v. Hiepler*, 945 N.W.2d 306, 313 (N.D. 2020), *reh'g denied* (July 22, 2020) ("[T]he successor trustee[] was properly substituted as a party for... [the] trustee.... upon [his] death."); *see also* 5 V.I.C. § 78; FED. R. CIV. P. 25(a); V.I. R. Civ. P. 25(a)(1). Consequently, the Superior Court committed no error when it substituted Naomi in place of Kenneth Sr., and we affirm the Superior Court on that issue as well.

## D. Damages Award

¶28    We now turn to the damages award. On July 15, 2019, the Superior Court entered a judgment in Naomi's favor for $1,328,956.81, reflecting (1) outstanding debts owed to Kenneth Sr. related to construction costs, and (2) for the eleven years of unpaid rents owed to Kenneth Sr. for his one-third share of the St. John Property, with the unpaid rental amount trebled for Appellants' alleged "waste" in withholding the payments.

---

[12] Appellants also argue that Bernice's presence during all hearings before the Court was improper as her presence is only "legally permissible under the November Trust." As it follows, Appellants assert that her participation in the proceedings suggested that the trial court and the Plaintiff have agreed that the November Trust is the real trust in interest."

*Turnbull, et al. v. Turnbull*                    2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 18 of 22

¶29    We will not disturb the Superior Court's ruling on the adequacy of damages absent a showing of a manifest abuse of discretion, as our review of a damage award is exceedingly narrow. *Myers v. Derr*, 50 V.I. 282, 287 (V.I. 2008). However, our review is plenary when the trial court's decision involves the application of law or a matter of statutory interpretation. *Id.*

### Outstanding Debts and Expenses Related to Construction Costs

¶30    The Appellants set forth several arguments attacking the damages award. First, they argue that the Superior Court failed to consider that Kenneth Sr. collected rental income for over two years to offset his initial investment in the construction on the St. John Property. The Superior Court did in fact recognize that Kenneth Sr. recouped $207,000 from renting the property from 2005 until April 30, 2008. However, it is unclear to what extent, if at all, the court found that those rents offset Kenneth Sr.'s construction expenses.

¶31    In June 2008, Kenneth Sr. filed a claim for $57,887.26 arising from unreimbursed construction expenses. In this case, the court found that "[a]s of the date Karen took over the Property, Kenneth Sr. was still owed [the] $57,887.26 for outstanding expenses relating to the Property construction." Further, within Kenneth Sr.'s verified notice of claims, he avers:

> The total amount of expenses paid by Mr. Turnbull was $232,614.41[,] plus interest [in the amount of] $32,272.85[,] plus closing costs on the loans, to be supplemented once obtained from the bank, for a current subtotal of $264,887.26. Of the $207,000 received by Mr. Turnbull in rental income, $83,510.15 has been applied towards interest and principal leaving a balance owed to Mr. Turnbull of $57,887.26
>
> Accordingly, it is respectfully requested that the Court award him judgment against the Estate for the balance of what is owed to him, $57,887.26 plus the costs incurred in securing the loans plus interest....

Therefore, it is unclear why the Superior Court adds $160,048.09 to this claim, for a new figure of $217,935.34 in allegedly unreimbursed expenses. The court found four sources of unreimbursed expenses in accumulating this new total:

*Turnbull, et al. v. Turnbull*     2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 19 of 22

  i. Insurance expenses in the amount of $4,743.01 paid to Family Insurance Agency in 2008;

  ii. Banco Popular Mortgage - Interest expenses from 2008 to 2013 totaling $26,210.13, and principal expenses totaling $49,219.52 on the Mortgage of the Home;

  iii. Banco Popular Loan No. 104-001-0178072-003 (representing Kenneth Turnbull, Sr.'s Consumer Loan on his Dodge Safari) - a loan in the amount of $44,000.00 plus interest from 2005 through 2007 in the amount of $9,698.50, for a total of $53,698.50; and

  iv. Banco Popular Loan No. 104-001-0178072-0005 (representing Kenneth Turnbull, Sr.'s Consumer Loan on his Toyota Camry refinance, also using his taxi medallion as collateral) - a loan in the amount of $25,000.00 plus interest through 2007 in the amount of $1,176.92, for a total of $26,176.92.

Kenneth Sr. states in his verified notice of claims that he has already been reimbursed for certain amounts on the auto loans and the home mortgage as of 2008, however the Superior Court still lists the auto loans as fully unreimbursed. While interest on unreimbursed expenses certainly may have grown from the time Kenneth Sr. filed his initial claim, there must be more clarity within the Superior Court's award as to the unreimbursed construction expenses stemming from the loans and mortgage. If some of the original $207,000 in rent proceeds did not go to the loans, the Superior Court must make clear where the rent proceeds did go, so as not to create a windfall.

¶32  The Superior Court further adds $28,400.88 to the expenses award: $12,950.88 for various amounts Kenneth Sr. borrowed from relatives and, subsequent to his passing, $15,450.00 in funeral costs and appraisal fees for expert witness Elisa Runyon, for a grand total of $246,336.22 in unreimbursed expenses. The Appellants do not dispute the additional $28,400.88. Therefore, on the issue of unreimbursed expenses, we remand this matter for the Superior Court to recalculate and specify the damages in excess of the original reimbursement claim by Kenneth Sr. ($57,887.26) and the undisputed damages listed above ($28,400.88), which total $86,288.14.

¶33  The Appellants also maintain that Kenneth Sr. was legally responsible for a one-third share of the building costs for the Property, and that the Superior Court's calculation did not take this

*Turnbull, et al. v. Turnbull*
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 20 of 22

2024 VI 24

into account. However, this issue was not raised before the trial court and therefore it is waived. V.I. R. APP. P. 22(m) ("Issues that were not raised or objected to before the Superior Court… are deemed waived for the purposes of appeal…."). They also contend that the Superior Court's calculation of the damages owed for construction costs was improper because there are costs included for car notes on a Dodge Safari and a refinanced Toyota Camry, and that there is no evidence that the two vehicles were used in, or were related to, the cost of construction. However, this argument is also waived, as the Appellants did not raise it before the Superior Court. *See* V.I. R. APP. P. 22(m). Finally, the Appellants assert that the verbal assignment of rights between Kenneth Sr. and Kenneth Jr. should have been in writing as it concerns an interest in property. However, the Appellants did not raise this issue before the Superior Court, and therefore it is also waived on appeal. *Id.*

## Withheld Rental Income and Waste

¶34     The Appellants allege that the trial court erred by trebling the undisputed rental income damages of $360,873.53 awarded to Naomi, under 28 V.I.C. § 334. We agree.

28 V.I.C. § 334 states, in pertinent part:

> If a guardian or a tenant in severalty or in common for life or for years, of real property, commits waste thereon, any person injured thereby may maintain an action for damages therefor against such guardian or tenant. In such action there may be judgment for treble damages….

To state a claim under § 334, a complainant must plead that another party (1) is "a guardian or tenant in severalty or in common for life or for years," (2) that they committed waste as to the property, and (3) that the complainant suffered injury due to the waste. *CBI Acquisitions, LLC v. Morrisette*, 2016 WL 8732792, at *4 (D.V.I. 2016) (unpublished). The Virgin Islands Code does not define waste, but "[w]aste… may be generally defined as the destruction, misuse, alteration,

*Turnbull, et al. v. Turnbull*          2024 VI 24
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 21 of 22

or neglect of premises by one lawfully in possession thereof, to the prejudice of the estate or interest therein of another." 47 AM. JUR. 3d *Proof of Facts* § 2 (1998). *See also* BLACK'S LAW DICTIONARY 1905 (11th ed. 2019) (defining "waste" as "permanent harm to real property committed by a tenant (for life or for years) to the prejudice of the heir, the reversioner, or the remainderman"). Here, the record does not disclose any destruction or harm to the St. John Property. Moreover, Naomi's complaint did not plead a cause of action under § 334, and did not allege any claim of waste, but rather, the Superior Court trebled the damages award under this statute *sua sponte* without examination or explanation and without evidence of waste. Thus, the trial court abused its discretion by trebling the damages award for the rents owed, and this portion of the award must be reduced to its original undisputed amount of $360,873.53. *See Phillip v. Marsh-Monsanto*, 66 V.I. 612, 622 (V.I. 2017) ("The court may not assume the role of advocate or rewrite pleadings to include claims that were never presented.") (internal quotation marks omitted); *Durga Prop. Holdings, Inc. v. Holiday Park Realty, LLC*, 2020 WL 1488660, at *2 (Mich. Ct. App. 2020) (unpublished) ("The trial court... abused its discretion by sua sponte... awarding plaintiff treble damages. ... [P]laintiff failed to allege in its complaint that defendant was liable for conversion, thereby precluding itself from recovering treble damages from defendant. ... [C]ourts are 'not permitted to graft onto a pleading allegations a party has not made.'") (quoting *Nyman v. Thomson Reuters Holdings, Inc.*, 942 N.W.2d 696, 704 (Mich. Ct. App. 2019), *appeal denied*, 943 N.W.2d 94 (Mich. 2020)).

## CONCLUSION

¶35     Because Naomi waived her arguments regarding standing and estoppel, Kenneth Jr. and Vivette may participate in this appeal. As Kenneth Sr. did not validly create the November Trust, the September Trust is the only valid trust. We therefore affirm the Superior Court's denial of the

*Turnbull, et al. v. Turnbull*
S. Ct. Civ. No. 2019-0062
Opinion of the Court
Page 22 of 22

2024 VI 24

Appellants' motion for summary judgment and the substitution of Naomi Turnbull as successor trustee of the September Trust. However, because the Superior Court abused its discretion in trebling the rental income damages, we reverse the Superior Court's July 15, 2019 order and we remand the case to the Superior Court for the calculation of any damages in excess of Kenneth Sr.'s original claim for reimbursement and the other undisputed damages, totaling $86,288.14, and to award this recalculated sum, plus the sum of $360,873.53 in undisputed rental income owed, as a judgment in favor of the September Trust.

**Dated this 5th day of June, 2024.**

**BY THE COURT:**

**MARIA M. CABRET**
**Associate Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By: /s/ Reisha Corneiro**
**Deputy Clerk**

**Dated: June 5, 2024**